**William Britt LEWIS, d/b/a Triangle Firewood Co., Plaintiff,**

v.

**Manuel LUJAN, et al., Defendants.**

**No. C90–0119J.**

United States District Court, D. Wyoming.

May 19, 1992.

Final Judgment July 21, 1992.

---

3. The award for costs and expenses includes the $687.55 awarded as costs by the Tenth Circuit.

Marcelle Shoop, Holland and Hart, Cheyenne, WY, Kyle A. Gray, Holland and Hart, Billings, MT, for plaintiff.

Maynard D. Grant, Asst. U.S. Atty., Cheyenne, WY, for defendants.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

This matter came before the Court on March 18, 1991 for hearing on plaintiff's Motion for Summary Judgment and defendant's Cross Motion for Summary Judgment. Having considered the materials on file both in support of and in opposition to the Motions, having considered the arguments of the par-

ties, and being fully advised in the premises, the Court FINDS and ORDERS as follows:

### BACKGROUND

■ Plaintiff Triangle Firewood Co. [Triangle] held the firewood concession permit for Yellowstone National Park from 1976 to 1989, during which time the National Park Service [NPS] found plaintiff's performance under the permit to be "satisfactory." Triangle's satisfactory performance rating entitled it to a "right of preference" in the issuance of the 1990–1994 firewood concession permit.[1] On October 20, 1989, the NPS issued a Statement of Requirements [SOR] for the 1990–1994 wood vending concession which invited the submission of firewood vending proposals, and indicated that a proposal contemplating the use of wood vending machines on a 24–hour basis would be preferred, or considered a "better" proposal over one which contemplated the continuation of manned sales during limited hours. The decision to prefer wood vending machines over manned sales was based in part upon NPS experience with such devices at other NPS administered areas, and NPS belief that such technology would provide park visitors with a superior service.

The NPS shortened the 60–day period for SOR responses to 30 days pursuant to an NPS finding that "exceptional circumstances" existed under 36 C.F.R. § 51.4(a), caused by the need to process a large concession permit backlog, and NPS belief that renewal of the permit authorizing the continued sale of firewood in Yellowstone was not expected to be controversial.

In response to the firewood SOR the NPS received two proposals. Plaintiff submitted a proposal for continue manned sales from A-frame huts on a limited hourly basis. Scott Daniels, d/b/a Firebox Inc., submitted a proposal to provide firewood on a 24–hour basis utilizing wood vending machines, and demonstrated his financial capability to undertake such a project. The NPS evaluated the two proposals and, based upon the language in

1. The "right of preference" in the renewal of a concession permit does not entitle the satisfactory concessionaire to an automatic renewal of his permit, but merely entitles him to a right to meet the terms of any competing proposals submitted to the NPS. *Canyoneers, Inc. v. Hodel,* 756 F.2d 754, 759 (9th Cir.1985). *See* 36 C.F.R. § 51.3(b).

the SOR providing that extended hours of sale by wood vending machines was preferable to limited hours of manned sales, determined that the Firebox Inc. proposal was superior. Plaintiff, pursuant to his right of preference, was then afforded 30 days in which to present a proposal "at least substantially equal" to the Firebox proposal.

Prior to the expiration of this 30 day period, plaintiff submitted an amended proposal to sell firewood by vending machine on a 24 hour basis. Although plaintiff's amended proposal was substantially equal to the Firebox proposal, the NPS concluded that plaintiff failed to demonstrated the financial ability to carry out his vending machine plans and had submitted false information regarding financing. The NPS proceeded to negotiate the wood vending concession permit with Firebox.

On May 18, 1990, plaintiff filed a complaint with this Court for injunctive and declaratory relief, contending that the actions of the NPS relative to the 1990–1994 firewood concession permit were arbitrary, capricious, an abuse of discretion, and in violation of the Administrative Procedure Act [APA], 5 U.S.C. 706(2)(A). Plaintiff specifies a number of NPS actions concerning the 1990 to 1994 firewood concession permit process which allegedly fail to comply with various applicable statutes, guidelines, and regulations, and urges the Court to reverse the entire permitting process as it relates to this case. Plaintiff asks the Court to enjoin Firebox from vending firewood by machine in Yellowstone; for an order reversing the decision of the NPS to negotiate the concession permit with Firebox; for a declaration that the NPS must issue the firewood concession permit to plaintiff; for a writ of mandamus commanding that the NPS cancel the Firebox permit and award the permit to plaintiff; and an order mandating that the NPS further study the proposal to provide firewood sales from vending machines.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted if "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Manders v. Oklahoma ex rel. Dep't of Mental Health*, 875 F.2d 263 (10th Cir. 1989), the Tenth Circuit established the guidelines for the issuance of summary judgment.

In considering a party's motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981)…. Under [Rule 56(c)], the initial burden is on the moving party to show the court 'that there is an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265] (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323 [106 S.Ct. at 2552–53].

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must 'make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' *Id.* at 322 [106 S.Ct. at 2552]; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 [106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202] (1986). The party resisting the motion 'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]. The mere scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251 [106 S.Ct. at 2511–12].

## STANDARD FOR REVIEW UNDER THE APA

 Under the Administrative Procedure Act [APA], this Court's review of NPS decisions is limited to the administrative record, or those parts of it cited by the parties, to determine if the decision is arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with the law, or is unsupported by substantial evidence. 5 U.S.C. § 706(2)(A) & (E). Unless an inadequate evidentiary development before the agency can be shown, and supplemental information submitted by the agency does not provide an adequate basis. for judicial review, the reviewing court should limit its inquiry to the administrative record already in existence supplemented, if necessary, by affidavits, depositions, or other proof of an explanatory nature. *Independent Meat Packers Association v. Butz,* 526 F.2d 228 (8th Cir.1975), *cert. denied,* 434 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1976). In conducting its review, the court must not substitute its judgment for that of the agency, but must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983); *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). This standard is highly deferential to the agency, and requires the reviewing court to grant agency actions a presumption of validity. *Sierra Club v. United States Army Corps of Engineers,* 772 F.2d 1043, 1051 (2d Cir.1985); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). The scope of review is narrow, and the agency's action must be reviewed on the basis articulated by the agency, and on the evidence and proceedings before the agency at the time it acted. *American Min. Congress v. Thomas,* 772 F.2d 617, 626 (10th Cir.1985), citing *Deukmejian v. Nuclear Regulatory Commission,* 751 F.2d 1287, 1323–1326 (D.C.Cir.1984). Normally, an agency decision would not be arbitrary and capricious unless the agency utterly failed to offer an explanation for its decision, or offered one that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Id.* In ascertaining whether the NPS decision was based on a consideration of the relevant factors, the Court must conduct a "thorough, probing, indepth review" of the administrative record

and explanatory materials. *Citizens to Preserve Overton Park,* 401 U.S. at 419, 91 S.Ct. at 825. When the reviewing court finds that a rational basis exists for the challenged agency action the court's function ends. *Sabin v. Berglund,* 585 F.2d 955 (10th Cir.1978) citing *Citizens to Preserve Overton Park,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Additionally, in determining whether administrative actions not supported by the record require reversal, courts are to give "due account" to the harmless error rule. 5 U.S.C. § 706(2). Consequently, in the present case summary judgment for the defendants is appropriate if the Court finds that a rational basis exists for NPS actions, or lacking such a finding, that any error by the NPS was harmless.

### DISCUSSION

*Necessary and Appropriate*

◼ Plaintiff contends that before the NPS could specify the use of firewood vending machines in the SOR, applicable regulations require a finding by the NPS that the use of firewood vending machines in Yellowstone was necessary and appropriate. Plaintiff's Brief at 38. The Court does not entirely agree.

An agency's interpretation of a statute it is entrusted to administer is entitled to substantial deference. *Oakland County Board of Commissioners v. United States,* 853 F.2d 439, 442 (6th Cir.1988). It is clear that regulations governing the management of concessions in the national parks do restrict concessions to those which are determined by the NPS to be "necessary and appropriate for public use and enjoyment of the national park area in which they are located and that are consistent to the highest practicable degree with the preservation and conservation of the areas." 16 U.S.C. § 20; 36 C.F.R. § 51.2. However, the NPS has interpreted 16 U.S.C. § 20 as requiring only that the basic service of firewood sales, and not the specific mechanism of sale, be subjected to the necessary and appropriate analysis. Aff. of R. Everhart, ¶ 11; Aff. of S. Martin, ¶ 13. Defendant's evidence indicates that during the 1970's firewood sales to Yellowstone visi-

tors was found to be necessary and appropriate to the management of the Park and consistent with providing a quality experience to the Yellowstone visitor. Aff. of S. Martin, ¶ 9. The Court finds that the NPS did not run afoul of its regulations in issuing the SOR without first performing a necessary and appropriate analysis of firewood vending machines.

*Notice*

■ Plaintiff contends that NPS regulations 36 C.F.R. sections 51.4(a) and 51.5 require the NPS to give sixty days notice for the submission of proposals in response to an SOR, but that in this case the NPS gave Triangle only thirty days notice for the submission of a proposal. Plaintiff argues that reducing the amount of time allowed for the submission of proposals was a fatal flaw to the administrative action taken by the NPS. 36 C.F.R. § 51.4(a) provides:

The prospectus [SOR] will be made available upon request to all interested parties and will allow a minimum of sixty days for proposals to be submitted unless a written determination is made that a shorter period is necessary because of exceptional circumstances.

Defendant's evidence indicates that the response period in the present case was shortened from 60 to 30 days pursuant to the NPS Regional Director's written determination that "exceptional circumstances" existed to shorten the period. Administrative Record [AR] at 107. The NPS determination of the existence of exceptional circumstances is entitled to substantial deference by the Court and will be upheld if there is a rational basis for the agency's action. *Fort Mill Telephone Company v. F.C.C.*, 719 F.2d 89 (4th Cir. 1986). The Regional Director's determination was founded upon the NPS's perceived need to overcome a large backlog of expired and expiring concession permits, and upon the belief that renewal of the Yellowstone firewood permit would not generate significant controversy. AR at 107; Aff. of R. Everhart ¶¶ 13–14; Aff. of T. Penttila, ¶¶ 6–12. It is significant that the Yellowstone firewood concession permit was not singled out for "exceptional circumstances" treatment; rather, response times were reduced

from 60 to 30 days on a total of 26 other concession proposal periods in order to accomplish the agency's goal of clearing out its backlog. Aff. of R. Everhart, ¶ 15; Aff. of T. Penttila, ¶ 16. The Court concludes that the NPS finding that exceptional circumstances existed permitted the NPS to shorten SOR response time, pursuant to 36 C.F.R. § 51.-4(a).

■ Plaintiff next claims that NPS failure to begin a one-year planning phase for the renewal of existing permits violates certain provisions of NPS Concessions Management Guidelines 48 [NPS–48]. Plaintiff argues that if the NPS had initiated the planning phase for permit renewal one year prior to expiration, as required by NPS–48, plaintiff and other interested parties would have had adequate notice that the NPS was interested in requiring wood vending machine services. Plaintiff asserts that NPS–48 guidelines have the same force and effect as statutes and regulations, and that failure to comply with NPS–48 flaws the entire permitting process, justifying reversal of the ultimate permitting decision.

In discussing the differences between "substantive" rules and "procedural" rules, the Supreme Court has held that in order for a regulation to have the force of law, it must have certain substantive characteristics and be the product of certain procedural prerequisites. *Chrysler Corp. v. Brown*, 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979). Regulations subject to the APA cannot be afforded the "force and effect of law" if not promulgated pursuant to the statutory procedural minimum found in that Act. *Id.* The *Chrysler* Court further noted that "interpretative" rules and "general statements of policy" do not have the force and effect of law and are issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power. *Id.*

The guidelines found in NPS–48 are general statements of policy which make recommendations and suggestions to agency personnel; they are not published in the Federal Register; nor disseminated for public scrutiny. Aff. of R. Everhart, ¶ 17. The provi-

sions of NPS–48 pertaining to a one year planning period were not promulgated under the APA and do not create a duty enforceable at law against the NPS. The Court finds that the amount of time allocated for contract and permit renewal planning in the instant case was reasonable under the circumstances. NPS Rocky Mountain regional concession personnel found that the Yellowstone firewood concession was relatively insignificant in relation to NPS region-wide concession responsibilities, and that the amount of time spent by NPS personnel in planning the firewood permit renewal necessarily depended upon the concession's size, complexity and public impact. Aff. of R. Everhart, ¶ 7.

*Fairness*

██ Plaintiff's next argument focuses upon the NPS's alleged violation of the "fairness" provision found in 36 C.F.R. sections 51.4(e) and 51.5, prohibiting the NPS from developing terms and conditions in an SOR intended to accommodate the capabilities or limitations of any particular party. Plaintiff argues that the SOR requirement for firewood vending machines in Yellowstone unlawfully favored Firebox because the SOR was developed with the NPS's knowledge that only Firebox had actual experience with the use of such technology. The NPS denies that the SOR was designed to accommodate Firebox, and maintains that NPS experience with wood vending machines in Curecanti National Recreation Area indicated that such technology existed and worked. Defendant's Brief at 21.

The Court's review of the SOR does not reveal any indication of an accommodation to Firebox. The SOR did not specify particular machine requirements, e.g., size, shape, capacity, brand, etc., but only required that the machines be reliable, well-maintained, coin-operated, and dispense wood 24 hours a day. AR at 9. The absence of particular specifications in the SOR allowed any prospective bidder the opportunity to submit a proposal, and the fact that Firebox was the only such business known to the NPS did not eliminate the possibility that other companies were providing similar services, or that they would be willing to do so once given the incentive.

██ Plaintiff next contends that the NPS denied him a fair opportunity to appropriately respond to the Firebox proposal because the NPS refused his request for a copy of that document. Plaintiff's Brief at 39. Citing *Fort Sumter Tours, Inc. v. Andrus,* 564 F.2d 1119, 1125 (4th Cir.1977), plaintiff argues that a concessioner with the right of preference is entitled to see competing bids and that nondisclosure of such information by the NPS constitutes reversible error. The NPS responds that plaintiff was provided with all information in the Firebox proposal that was not marked as containing either trade secrets or confidential information, and that such privileged information is protected from disclosure.

The Court agrees with defendant that confidential financial information and trade secrets were not at issue in *Fort Sumter.* In that case the 4th Circuit did not decide the ultimate issues presented by that case, but did note, in dicta, its view that a "substantial question" existed concerning whether an existing concessioner's right of preference was honored by the agency when the agency failed to allow the existing concessioner to inspect the document itself for possible deficiencies. *Fort Sumter,* 564 F.2d at 1125. The *Fort Sumter* Court further stated that for preferential negotiating rights to be real rather than illusory, the existing concessioner should be fairly apprised of the proposal of an outside bidder so that he knows what he is being called upon to equal. *Id.*

In the present case the NPS disclosed sufficient, unprivileged information to enable Triangle to submit its own acceptable firewood vending machine proposal. The NPS policy of withholding information marked trade secret or confidential was rationally based upon a concerns that: (1) the government's ability to obtain necessary information in the future may be impaired; or (2) such release may cause substantial harm to the competitive position of the person from whom it is obtained. Defendant's Brief at 30; *National Parks and Cons. Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974). Further, the Court finds that plaintiff was not harmed by the withholding of such information. Plaintiff was obviously able to submit

an amended proposal utilizing firewood vending machines which met with NPS approval, except for Triangle's failure to provide for sufficient financing.

■ Plaintiff alleges that the NPS unfairly held plaintiff to a higher standard of financial reporting than required of Firebox, and awarded the firewood concession permit to Firebox even though the Firebox proposal failed to provide all the financial information required by the SOR. Plaintiff's Brief at 40–47. Plaintiff fails, however, to direct the Court to any statutory duty requiring the NPS to reject proposals which fail to provide requested information. The NPS responds by noting that complete conformance to an SOR's request for financial information is not required and that a proposal is deemed satisfactory when it provides sufficient financial information for the agency to determine that the bidder can finance the proposal. Aff. of J. Churchwell, ¶ 4; Defendant's Brief at 31. In the present case the NPS permit review panel determined that Firebox could sufficiently finance its firewood vending machine proposal based upon the information submitted by Firebox. Aff. of M. Murphy, ¶ 4–5. Absent a duty requiring bidders to completely conform with SOR information requests, the Court finds that the determination of the review panel was rationally based.

*Economic Analysis*

■ Relying upon various statutory enactments, as well as NPS–48, plaintiff contends that NPS failure to determine the economic feasibility of the Firebox proposal was not in accordance with the law, thus requiring reversal of the decision to deny plaintiff's proposal. Plaintiff's Brief 48–52. Plaintiff asserts that under NPS–48 a feasibility analysis should be performed by the NPS to determine whether the concessioner has a reasonable opportunity to realize a profit prior to developing contract requirements, and urges the Court to require that the NPS conduct such studies for permit requirements as well. Plaintiff's Brief at 50. Where clear statutory directives establishing agency duty are absent, the Court must decline plaintiff's invitation to demand any more of the NPS than rationally based decisions. NPS–48

recommends that the NPS perform feasibility studies for new concession operations and when developing contract requirements; no such analysis is required prior to developing permit requirements. Aff. of T. Penttila, ¶ 20; NPS–48, § 1, chap. 3, part F, p. 8. The Court finds that the NPS determination that Firebox would have a reasonable opportunity to realize a profit through 24–hour firewood sales via vending machines was rationally based upon the NPS knowledge of Triangle's net income history from 1982 to 1989, and upon knowledge of the capital investment needed to implement the Firebox proposal. Exhibit A to the J. Churchwell aff.

■ Lastly, plaintiff argues that because the pro forma statements submitted by Firebox contained anticipated annual gross receipts in excess of $100,000.00, NPS failure to submit the negotiated permit to Congress prior to award constitutes reversible error in the decision to deny plaintiff's proposal. Plaintiff's Brief at 52–55. 36 C.F.R. § 51.-4(d) provides in part:

> After negotiations of Concession Contracts with anticipated gross receipts in excess of $100,000 or five (5) years or more in duration, such contracts shall be forwarded to the Senate Committee on Energy and Natural Resources and the House Committee on Interior and Insular Affairs for a 60–day waiting period prior to award.

The NPS did not submit the negotiated Firebox permit to Congress because it did not meet either of the criteria set forth in section 51.4(d). The Firebox permit was for a period of only four (4) years, and anticipated annual gross receipts for the 1990 to 1994 permit period, despite the Firebox pro forma figure, were calculated by the NPS to be less than $100,000.00. Aff. of J. Churchwell at 3. NPS concession management employees indicated that a bidder's pro forma is never used to estimate annual gross receipts; rather, such estimates are calculated using a concession's historic sales data. Aff. of R. Everhart, ¶¶ 19–20; Aff. of T. Penttila, ¶ 23; Aff. of J. Churchwell, ¶ 6. In view of the fact that Triangle's average annual gross receipts for 1982 to 1989 were $66,000.00; and that Firebox's actual gross receipts for the 1990 operating season totalled $45,406.00 (Aff. of

J. Churchwell at 5; Exh. A of Churchwell Aff.) the Court cannot find that the NPS estimate was either unreasonable or irrational.

THEREFORE IT IS ORDERED that for the reasons stated above plaintiff's Motion for Summary Judgment should be, and is, DENIED.

IT IS FURTHER ORDERED that defendants' Motion for Summary Judgment should be, and is, GRANTED.

### FINAL JUDGMENT

This matter came before the Court on cross motions for summary judgment on all claims arising from an appeal of administrative agency action. On May 19, 1992, the Court entered an "Order Ruling on Motions for Summary Judgment," granting the summary judgment motion of defendants and denying the summary judgment motion of plaintiff.

NOW, THEREFORE, IT IS ORDERED that in accordance with the Court's "Order Ruling on Motions for Summary Judgment," Final Judgment is granted in favor of defendants, and against plaintiff on all of the plaintiff's claims; it is

FURTHER ORDERED that plaintiff's complaint is therefore dismissed with prejudice.