## CARROLL v. GILES.

Barbering is such a business as will support a sale of its "good will" for a definite time and within a defined territory; but where G, a barber, who had no shop or patronage of his own, entered into an agreement with C, the proprietor of a barber shop, that C should keep the shop and pay all its expenses, and G was to manage it, .and "not to do any work, now or hereafter, outside of the shop owned by C, or hire to any party or open a shop of any kind to carry on the barber business in" that town, and to "convey all patronage extended to him heretofore to the business owned by C," "the gross receipts to be divided equally," such agreement was only a contract of indefinite partnership, and G's stipulation never to do any barbering business outside of C's shop was unreasonable, and will not be specifically enforced, or its violation enjoined.

Before FRASER, J., Marlboro, June, 1888.

This appeal was from the following decree: .

This case was heard by me at the term of the court held in June, 1888, upon the pleadings and testimony taken in open court, the answer of the defendant being read by consent as his testimony. It was agreed by consent that the whole case should be heard by the court, trial by jury being waived as to any issues in the case properly triable by a jury.

The contract set out in the complaint was properly established, there being no just cause for objection to the manner of its execution or to the consideration. Plaintiff has performed his part of the agreement, and there has been a failure on the part of the defendant to perform his part, and for this there has not been shown any sufficient excuse. The testimony fails to show any amount of pecuniary loss to plaintiff, the plaintiff having stated that he could not say what were the gross receipts from the business which was the subject matter of the contract, and there being no further testimony from which an estimate of the value of the business could be made. It also appears that after the defendant had left the business in which he was engaged under the contract with the plaintiff, an agreement was made between the plaintiff and defendant, that the defendant should work for the plaintiff at his trade as a barber, and in the same shop, at the rate of ten cents an hour, entirely inconsistent with the original agreement under which the plaintiff was to receive one-half of the gross receipts, and that for one day this second agreement was carried out. Besides the agreement to divide the gross receipts, the defendant agreed, in the above mentioned contract, not to do any work "now or hereafter outside of the shop owned by H. W. Carroll (the plaintiff), or hire to any party or parties, or open a shop of any kind to carry on the barber business, either directly or indirectly, in Bennettsville, S. C.; and he hereby agrees to convey all patronage extended to him heretofore to the business owned by H. W. Carroll."

It is the purpose of this action to have a perpetual injunction against the defendant, against violating the above agreement, not to do any work outside of the shop, &c., and for damages for having violated the terms of his contract.

At the instance of the defendant, the plaintiff had bought out the barbering business of one Huckabee, in which defendant had

no interest. Defendant, at the time of the contract, had no shop of his own, but carried on business for himself, travelling about the town and country. After leaving the employment of plaintiff, the defendant opened in Bennettsville a barber shop of his own. I am inclined to the opinion that the new agreement above referred to, to work for plaintiff at ten cents an hour, is so inconsistent with the original contract as to supersede it and estop the plaintiff from enforcing in any way the original agreement. *Chitty on Contracts*, *741, note w. (Merrimon ed., 1844). In the view I take of this case, this is not important.

This does not seem to me to be one of those cases in which the specific performance of a contract can be enforced. *Pom. Eq. Jur.*, § 1402. It is in cases where there is a right to have specific performance of contracts that injunctions are proper. The remedy applies to cases of contracts for personal services or acts where there are stipulations for special unique extraordinary acts, or for such services or acts to be rendered or done by a party having special unique and extraordinary qualifications, as, for an example, by an eminent actor, singer, artist, and the like. *Pomeroy Eq. Jur.*, § 1343. "It may be stated as a general rule that a Court of Equity will not interfere to restrain by injunction a violation of a restricted covenant in a contract, in relation to *ordinary* business transactions, but the aggrieved party will be left to his remedy at law." Thus in a case of an agreement between an artisan and his employer, that the former shall work for the latter, and no other person, the court will not interfere to enforce the covenant to render services. 3 *Wait Act. & Def.*, 741, § 1. A different rule prevails where the services involve the exercise of powers of mind, as of writers and performers. *Ib.* See also *Machine Co.* v. *Morse*, 4 Amer. Rep., 513; *High on Injunctions*, sec. 741, note 2. Such contracts in restraint of trade, except in certain cases, are regarded as contrary to public policy. I see nothing in the case of the defendant to put him on any other footing than other ordinary artisans. With these views I have come to the conclusion that this is not a case for exercise of the equity jurisdiction by injunction.

Looking at the case as action on the law side of the court for damages for breach of the contract made by the defendant, I find

no evidence on which a case could go to a jury, as there is no testimony to show any loss to plaintiff. It may be that there were considerable gross receipts; or there may have been none; or there may not have been sufficient to meet the plaintiff's share of the expenses. There is a total failure of evidence on this point, and a non-suit would be proper.

It is therefore ordered, that the temporary injunction heretofore ordered be dissolved, and that the complaint be dismissed with costs.

*Messrs. D. D. McColl* and *T. W. Bouchier*, for appellant.

*Messrs. Townsend & McLaurin*, contra.

March 13, 1889. The opinion of the court was delivered by

Mr. Justice McGowan. The plaintiff and defendant entered into a written agreement, the important part of which was as follows: "Witnesseth that H. W. Carroll, of the first part, hereby promises and agrees to furnish all furniture necessary to run a complete barber shop. Said H. W. Carroll agrees to pay all current expenses of the shop, including rents, washing, oil, materials to run the business, &c. The said John H. Giles, of the second part, promises and agrees to keep the business diligently, to do all the work necessary to run the shop, and keep the shop clean and in order, and to be responsible for the breakage of any or all furniture which may be placed in his care; he further agrees to collect charges for all work done, and to make a prompt and full settlement of the business daily to H. W. Carroll or his authorized agent, and to be personally responsible for all amounts charged or credited to any party or parties; and he furthermore agrees, that in consideration of the shop being furnished for his use, he binds himself and hereby agrees not to do any work, now or hereafter, outside of the shop owned by H. W. Carroll, or hire to any party or parties, or open a shop of any kind to carry on the barber business, either directly or indirectly, in Bennettsville, S. C.; he hereby agrees to convey all patronage extended to him heretofore to the business owned by H. W. Carroll. We

and each of us mutually agree to divide the gross receipts of the business equally between us," &c.

The defendant, Giles, worked about one month in the shop of the plaintiff, and becoming dissatisfied he left. He, however, returned and made an agreement with the plaintiff to stay in the shop at ten cents an hour, or a dollar per day, until plaintiff could get another man ; but he only stayed one day and left again, saying he would not stay any longer on any terms, and opened another barber shop on his own account in the town of Bennettsville.

Thereupon the plaintiff commenced this action, demanding judgment that the defendant be enjoined from further carrying on for himself or any one else, either directly or indirectly, the barbering business, either in a shop or otherwise, within the town of Bennettsville, at any time hereafter, and for one hundred dollars damages, &c. The defendant resisted stoutly : denying that he had any "patronage" or "good will" to transfer, or that there was any consideration for the alleged contract on his part not to do any work at his trade in Bennettsville outside of plaintiff's shop, which, as he understood it, was to continue only while there was a continuance of the partnership, and not "to bind him forever," which, as construed by the plaintiff, was not reasonable, against public policy, and intended to create a "monopoly" in Bennettsville as to the barbering business. He claimed that the contract was nothing more than an ordinary executory partnership in business, without limitation, which either party could terminate ; and that he terminated it for the good and sufficient reason that the plaintiff failed to carry out his part of the agreement, especially in not allowing him, the defendant, to manage the business of the shop, but in bringing in other persons who were disagreeable. And, as a counter-claim, he alleged that he had been injured one hundred dollars.

The Circuit Judge dismissed the complaint, saying: "There is nothing in the case to put the defendant on any other footing than another ordinary artisan. Thus in a case of an agreement between an artisan and his employer, that the former shall work for the latter, and no other person, the court will not interfere to enforce the covenant to render services. 3 *Wait Act. & Def.,*

141, § 1. A different rule prevails where the services involve the exercise of power of mind, such as of writers and performers. 4 *Amer. Rep.*, 513; *High Inj.*, § 741," &c.

From this decree the plaintiff appeals upon the following exceptions:

"1. Because his honor erred in holding that the contract set forth in the complaint, and which was admitted at the trial, is not such a one as can be specifically enforced.

"2. Because his honor erred in holding that the case proved is not one for the exercise of equity jurisdiction by injunction.

"3. Because his honor erred in holding that an action for pecuniary damages was the only remedy the plaintiff had for a breach of the alleged contract.

"4. Because his honor erred in holding that the action was for affirmative specific performance, whereas it is submitted, that it was brought to restrain a breach of contract, and therefore negative in the relief sought.

"5. Because his honor erred in not holding that the contract was valid and binding, and that the plaintiff was entitled to an injunction to restrain a breach thereof.

"6. Because his honor erred in not holding that the contract being reasonable in its nature, limited as to locality, and for specific personal services, could be specifically enforced.

"7. Because his honor erred in not holding that this was a case where there was no adequate remedy at law, and hence one peculiarly within the equity jurisdiction of the court," &c.

In respect to contracts which affect business relations, Mr. Pomeroy says: "It has been the policy of the law to promote the freedom of engaging in and carrying on all kinds of business which are beneficial to the public. * * * Contracts in general restraint of trade, whatever be their form or the nature and immediate object of their stipulations, are void. * * * On the other hand, contracts in partial restraint of trade are valid. To this end they must be partial with respect to the territory included: reasonable with respect to the amount of territory, the circumstances and the rights of the party burdened and the one benefited by the restriction, and the number and interests of the public, whose freedom of trading is circumscribed, and made upon

27—30

a valuable and sufficient consideration. The jurisdiction of equity is generally exercised in respect to these contracts for the purpose of indirectly compelling their specific performance by means of an injunction," &c., &c.

Such contracts are frequently made in connection with a sale of a business and good will, the vendor stipulating that he will not carry on the same business within a specified distance from the old place and for a specified time, or will not solicit their old customers for their trade, and the like. These kinds of stipulations, if reasonable as to territory and time, will be enforced against the vendor, often by an injunction, as to negative stipulations especially. *Mitchel* v. *Reynolds*, 1 *Smith Lead. Cas.*, 508, and notes; 2 *Pom. Eq. Jur.*, § 934, and authorities cited in the notes. "A sale of a business and good will, and contract not to engage in the same business in a certain town for a certain time, held valid. *Hedge* v. *Lowe*, 47 Iowa, 137." "A contract not to carry on a certain trade within a specified time will be enforced. *Ellis* v. *Jones*, 56 Ga., 504."

There is not much science or power of mind necessary in the business of barbering, but some degree of skill and practice are required, and, being a trade, we suppose that, so far as the nature of the business is concerned, we may consider it as within the principle above indicated. But is this a case falling within the rule? It does not strike us so. There was no sale here of "a business" and "good will" by the defendant, in which the price paid was enhanced by the vendor stipulating not to carry on the same business in a specified locality and for a specified time. It is true that the defendant was a barber, going about the town and county barbering, but had no shop, patronage, or good will to sell. The plaintiff did not purchase his outfit from the defendant, giving him a liberal price, in consideration of his unusual stipulation to stay with him or go out of the business. It seems to us that the contract was really nothing more than one of a partnership indefinite in duration, in which one party stipulated to furnish the capital or outfit, and the other to contribute his labor and skill, "dividing the gross receipts equally;" and that the stipulation on the part of the defendant never to do any barbering in Bennettsville outside of the plaintiff's shop "now or

hereafter" was "unreasonable," and not of such a character as to call for the exercise of the equitable jurisdiction in requiring it to be specifically performed.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.