17448

Roy SOMERSET, Respondent, v. Alan REYNER and Reyner's, Inc., Appellants

(104 S. E. (2d) 344)

*Messrs. Marchant & Bristow,* of Columbia, *for Appellants,*

326

*Messrs. Robinson, McFadden & Dreher,* of Columbia, *for Respondent,*

July 14, 1958.

OXNER, Justice.

This action was brought by Roy Somerset for a declaratory judgment that a covenant against competition contained in an option agreement signed by him on June 1, 1957, is void and unenforceable. During the trial of the case the Court allowed plaintiff to amend his complaint by alleging that this option had been superseded by a bill of sale executed on June 7th. After hearing the testimony, the County Judge held the restrictive covenant unenforceable upon the grounds (1) that the provisions in the bill of sale of June 7th superseded those contained in the option agreement of June 1st, and since the restrictive covenant was not contained in the bill of sale, it was not in effect, and (2) that if the covenant continued in force, it was unreasonable as to both time and space and, therefore, void as against public policy.

The material facts disclosed by the testimony, which are largely undisputed are as follows:

Plaintiff is by trade a "spinner", referred to in the testimony as one of the occupations of the silversmith industry. Such training is of great value to a retailer selling silver. In 1946 plaintiff and his brother, who lived in New Jersey, formed a South Carolina corporation known as "The Sterling Shop". Each owned half of the stock but plaintiff was in active charge of the business. This corporation sold at retail silver, china, crystal, jewelry and related articles. It also did a limited amount of repair work. The store was located at Five Points in the City of Columbia. The business

was successful. Annual sales ran around $90,000.00. Ninety-five per cent of the sales were in the area of Greater Columbia (Columbia, Cayce, West Columbia and Fort Jackson). Only about 5% of the business came from outside this area, the greater portion of which consisted of sales at a discount to four or five florist shops in the lower part of the State which handled merchandise for brides. All other sales outside the Columbia area were negligible.

In 1956, plaintiff bought a restaurant. In order to raise funds to pay losses sustained in this venture, which was wholly unrelated to the retail silver and jewelry business, he decided to sell The Sterling Shop and approached Alan Reyner, president of Reyner's, Inc. These discussions resulted in an option agreement executed by Reyner, Reyner's, Inc., plaintiff and The Sterling Shop, on June 1, 1957. Under the terms of this instrument, Alan Reyner, for $250.00, was given a thirty-day option to purchase "the business of Roy Somerset and/or The Sterling Shop" at Five Points, including good will, merchandise, fixtures and all other assets except accounts receivable, at inventory value plus 20%, but in no case to exceed $35,000.00. The contract fixed the method of determining the inventory value. Plaintiff further agreed to rent for one year the premises in which The Sterling Shop was located to Alan Reyner at a certain rental, with the right to renew for an additional period of five years. The option contained the following clause, which is the subject of this controversy:

"In further consideration of this sale, Roy Somerset and/or The Sterling Shop agrees that he or it will not engage in the business of retail selling of jewelry, silverware, or similar items in the State of South Carolina for a period of twenty (20) years. Roy Somerset understands and agrees that this may limit him in his selling activities, but he does not intend to engage in this form of business and is perfectly agreeable to this paragraph."

The option was promptly exercised. The value of the inventory, computed in accordance with the terms of the op-

tion, amounted to $25,000.00, to which was added $5,000.00 as the value of the fixtures and equipment, making a total of $30,000.00. The transaction was consummated on June 7, 1957. On that date The Sterling Shop, in consideration of $30,000.00, executed a bill of sale transferring all of its assets except accounts receivable to Reyner's, Inc. This bill of sale did not contain the restrictive covenant in controversy but did include a provision not contained in the option to the effect that Reyner's, Inc. could in its discretion use in the conduct of its business the name "The Sterling Shop". Contemporaneously with the delivery of this bill of sale, plaintiff, in accordance with the terms of the option, leased the premises in which the business was conducted to Reyner's, Inc.

All of the foregoing instruments were either prepared by Alan Reyner or his attorney. At no time was plaintiff or The Sterling Shop represented by counsel.

On June 11, 1957, the accounts receivable of The Sterling Shop were sold to Reyner's, Inc. for $7,500.00. A few days thereafter plaintiff was employed as manager of Reyner's, Inc. but was discharged about three months later. The record discloses that after acquiring this business, approximately 88% of the sales of Reyner's, Inc., which had one other store in Columbia, came from the Greater Columbia area.

It is well settled that a restrictive covenant not to compete, ancillary to the sale of a business and its good will, will be upheld and enforced if "(1) supported by a valuable consideration, (2) if reasonably limited as to time, and (3) if reasonably restricted as to the place of territory, that is, where the time is not more extended or the territory more enlarged than essential for a reasonable protection of the rights of the purchasing party." *Metts v. Wenberg,* 158 S. C. 411, 155 S. E. 734, 735. Also, see *Carroll v. Giles,* 30 S. C. 412, 9 S. E. 422; *Walter A. Wood Mowing & Reaping Co. v. Greenwood Hardware Co.,* 75 S. C. 378, 55 S. E. 973; *Reeves v. Sargeant,* 200 S. C. 494, 21 S. E. (2d) 184; *Delmar Studios of the Carolinas v. Kinsey,* (S. C.) 104 S. E. (2d) 338.

We shall first determine whether the covenant under consideration is necessary in its full extent for the protection of the covenantee's business or good will. If not, the territorial scope of the restraint is unreasonable and no inquiry need be made as to the presence or absence of other necessary requirements. See lengthy Annotation in 46 A. L. R. (2d) 119.

The business sold was a comparatively small retail store. The trade came almost entirely from the area of Greater Columbia. Sales to customers living elsewhere, with the exception of four or five florists, were described in the testimony as being very "spotty". Obviously, it was unnecessary to the protection of the business sold, or that later operated by Reyner, Inc., that plaintiff be prohibited from engaging in a similar business in Charleston, Spartanburg, Greenville or numerous other cities in South Carolina. So much seems to be conceded by Alan Reyner. He testified that when Somerset later complained that the agreement put him in "bondage", he told Somerset that "I certainly had no idea of holding him in bondage, that at any time he wanted to open up any business outside of this Columbia area, I'd be happy to let him do it."

We find no rational basis for the extent of the territorial restraint. In that respect the covenant is clearly invalid.

The further contention is made that plaintiff is estopped to attack the validity of the covenant upon the ground that it covers a greater territory than necessary. This defense is based upon the testimony of Reyner that in his discussion with plaintiff of the area to be included, plaintiff told him, "you can make it for the whole State", as he had no intention of going back in the business. No authority has been cited by counsel for Reyner, and we have found none, sustaining this plea of estoppel. The reason why such covenants are held to be unenforceable is that unless they meet certain criteria, they constitute a restraint upon trade which is against public policy. The general rule is that an agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel. 17 C. J.

S. Contracts § 280, page 669; *Dubuque Fire & Marine Insurance Co. v. Miller,* 219 S. C. 17, 64 S. E. (2d) 8. It may not be amiss to add that the contention that the excessive restraint was made at the suggestion of plaintiff is inconsistent with Reyner's present contention that a restriction throughout the whole State was necessary for the protection of the business purchased.

Finally, appellants say that if the covenant is found unreasonable as to space, it should be enforced within such area as necessary for the reasonable protection of the business sold. This is the most difficult question presented by the appeal and is one which has given the writer considerable concern.

A majority of the courts apply the so-called "blue pencil test", that is, if the excessive restraint is severable in terms, it may be disregarded and the remaining part of the contract enforced; but if the contract is not severable in terms, the entire covenant falls. Williston on Contracts, Revised Edition, Volume 5, Sections 1659 and 1660. Restatement, Contracts, Section 518, follows this doctrine. A few other courts apply the rule that if the restrictive agreement as to time or space is unreasonable, even though indivisible in terms, it is nevertheless enforceable for so much of the performance as would be a reasonable restraint. They say that the legality of the restraint should not turn upon the mere form of wording but upon the reasonableness of giving effect to the indivisible promise to the extent that would be lawful. Professor Corbin strongly advocates this rule. Corbin on Contracts, Volume 6, Section 1390. It also appears that Professor Williston, who drafted Section 518 for the American Law Institute, has now come around to the minority view. The tendency of the later cases is to adopt it. Wisconsin has recently done so. *Fullerton Lumber Co. v. Torborg,* 270 Wis. 133, 70 N. W. (2d) 585.

In *Beit v. Beit,* 135 Conn. 195, 63 A. (2d) 161, 166, 10 A. L. R. (2d) 734, the Court in disapproving the minority view said: "The difficulty with that position is that it gives

effect to the conclusion of a court as to the extent to which a covenant unreasonably broad in its terms can in fairness and equity be enforced rather than to the extent of the parties, who, had they desired a narrower provision, should have agreed upon it." The Court then quoted with approval the following from Pollock, Contracts (11th Ed.), page 335: "A restrictive covenant which contains or may be read as containing distinct undertakings bounded by different limits of space or time, or different in subject matter, may be good as to part and bad as to part. But this does not mean that a single covenant may be artificially split up in order to pick out some part of it that it can be upheld. Severance is permissible only in the case of a covenant which is in effect a combination of several distinct covenants."

The North Carolina Law on this subject was recently discussed by us in *Delmar Studios of the Carolinas v. Kinsey, supra,* (S. C.) 104 S. E. (2d) 338.

Very persuasive reasons can be advanced for the adoption of either of the views above discussed. They are set out in the numerous cases on the subject and need not be repeated. It is enough to say that in the instant case we would not be warranted in undertaking to split up the covenant and carve out an area which we might regard as reasonably necessary for the protection of the covenantee. In 17 C. J. S. Contracts § 289 a, page 677, it is stated: "The severability of the contract must be determined from its language and subject matter, and the court cannot create a new agreement for the parties in order to uphold the contract, where the severable character of the agreement is not determinable from the contract itself." The covenant here is clearly indivisible. It covers the entire State of South Carolina and furnishes no basis for dividing this territory. Not only does the contract show that it was the intent of the parties that this covenant be treated as indivisible, there is no basis for drawing a sharply defined line separating the excess territory. We cannot make a new agreement for the parties into which they did not voluntarily enter. The invalidity of

the covenant is not aided by appellants' willingness to accept a restriction that is proper in scope.

Having concluded that the covenant is unreasonable as to territorial restraint, we need not determine whether it is unreasonable as to time. Neither are we called upon to pass upon respondent's contention that the covenant is without consideration and his further contention that it was superseded by the bill of sale of June 7th.

Judgment affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.