**ROCKFORD MANUFACTURING, LTD., et al., Plaintiffs,**

v.

**David D. BENNET, et al., Defendants.**

**No. CIV.A.2:03–837–23.**

United States District Court,
D. South Carolina,
Charleston Division.

May 28, 2003.

684

Ellis R. Lesemann and John C. McElwaine of Nelson Mullins Riley & Scarborough, Charleston, SC, for plaintiffs.

Allen R. Holmes, Gibbs & Holmes, Charleston, SC, for defendants.

### AMENDED ORDER

DUFFY, District Judge.

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction, pursuant to 5 U.S.C. § 705 and Fed. R.Civ.P. 65. For the following reasons Plaintiffs' motion is granted.

### BACKGROUND

Plaintiffs filed suit in this Court on March 14, 2003. On April 25, 2003, Plaintiffs filed their First Amended Verified Complaint, seeking damages and other relief, for various claims, including breach of contract, breach of the duty of loyalty and violations of the federal Copyright Act, 17 U.S.C. § 101, and the federal Computer Fraud and Abuse Act, 17 U.S.C. § 1030. Plaintiffs contend that Defendants were former employees who have now wrongly solicited customers, dealers, and employees and who have appropriated confidential trade secrets in violation of non-solicitation agreements entered into by the parties.

Plaintiffs are all legally distinct, but affiliated entities involved in the engineering, design, manufacture, and marketing of steel buildings. Plaintiffs' products are available to the general public through a network of authorized dealers. Defendants each formerly held a position of employment with either Plaintiff Rockford Manufacturing or Plaintiff Rockford Acceptance. Plaintiffs originally alleged that Defendants Supreme Steel Buildings, Inc. and Supreme Building Systems are the apparent and current employers of some or all of the individual Defendants. Plaintiffs, however, have recently dismissed without prejudice Defendant Supreme Steel Buildings, Inc.

Plaintiffs contend that as sales employees, Defendants had significant access to confidential, proprietary and trade secret information, including, but not limited to: (1) confidential dealer lists; (2) confidential vendor lists; (3) confidential client lists; (4) confidential cost, estimating and pricing data; and (5) confidential information concerning manufacturing processes and practices.

Plaintiffs contend that Defendants signed agreements containing restrictive covenants regarding non-solicitation, non-disclosure, and non-competition. Plaintiffs allege further that in violation of such agreements, Defendants have (1) established a web-site, which allegedly plagiarizes information from Plaintiffs' website; (2) obtained illegal access to Plaintiffs' computer systems by fraud and have used such access to misappropriate highly protected trade secrets; and (3) solicited Plaintiffs' dealers, vendors, customers, contacts, and employees.

### DISCUSSION

#### I. Preliminary Injunction

The Fourth Circuit outlined the analytical framework, which courts must employ in determining whether to grant preliminary relief, in *Direx Israel, Ltd. v.*

*Breakthrough Medical Corp.*, 952 F.2d 802, 811 (4th Cir.1991) (citing *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 195 (4th Cir.1977)). First, the party requesting preliminary relief must make a "clear showing" that he will suffer irreparable harm if the court denies his request. *Id.* at 812–13. Second, if the party establishes irreparable harm, "the next step then for the court to take is to balance the likelihood of irreparable harm to the plaintiff from the failure to grant interim relief against the likelihood of harm to the defendant from the grant of such relief." *Id.* at 812. Third, if the balance tips decidedly in favor of the party requesting preliminary relief, "a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." *Id.* at 813. However, "if the balance does not tip decidedly there must be a strong probability of success on the merits." *Id.* Fourth, the court must evaluate whether the public interest favors granting preliminary relief. *Id.*

■ The two most important factors are the probable irreparable harm to the moving party if an injunction is not issued and the probable harm to the non-moving party if an injunction is issued. *Blackwelder,* 550 F.2d at 198. If the balance of these two factors is in the non-moving party's favor, he or she does not have to show a likelihood of success on the merits, and the presentation of a grave or serious question is sufficient to warrant a preliminary injunction. *Id.* However, the inverse is true that if the likelihood success on the merits is great, the need for showing irreparable harm decreases proportionately. *Combined Insurance Company of America v. Investors Consolidated Insurance Co.*, 499 F.Supp. 484 (E.D.N.C.1980).

## A. Balance of Harms

■ Plaintiffs contend simply that they will suffer irreparable injury because their "confidential information, dealer lists, completed building lists, price lists and pricing information, and detailed customer information that Plaintiffs have spent years developing ... is invaluable in the hands of Plaintiffs' competitors ...." (Pl.s' Mot. at 11.) Plaintiffs have made a significant attempt to quantify the cost associated with developing what they consider their most important asset: a network of dealers who sell Plaintiffs' steel buildings products. (See Wirth Aff. at 2–6.) Notwithstanding their ability to quantify a portion of the potential injury they face, Plaintiffs contend that if Defendants are permitted to interfere in their dealer network, much of the injury would be irreparable insofar as there would be a resultant loss of good will and inability to restore dealer relationships. Plaintiffs have submitted the affidavit of Michael Wirth in support.

In contrast, Defendants have come forward with no evidence as to the potential harm they might face if the injunction were to lie. Plaintiffs contend that Defendants would suffer no harm because abiding by the Agreement not to solicit Plaintiffs' customers, employees, or dealers in no way prohibits them from other meaningful work. (See Wirth Aff. at 6–7.)

On this evidence, however, the Court cannot conclude that the balance of harms tips decidedly in Plaintiffs' favor. The Court is not convinced of the degree of irreparability as Plaintiffs contend. As a result, the burden on Plaintiffs to establish a likelihood of success on the merits becomes considerably greater. *See Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 817 (4th Cir.1991). Plaintiffs must demonstrate that there is a *"strong probability* of success on the merits." *Id.* at 813 (emphasis added).

## II. Likelihood of Success on the Merits

■ Plaintiffs also contend that there is a strong probability that they will succeed in enforcing the non-solicitation agreements. Restrictive covenants not to compete or solicit, however, are generally disfavored and will be strictly construed against the employer. An agreement's enforceability depends on whether it

 (1) is necessary for the protection of the legitimate interest of the employer,

 (2) is reasonably limited in its operation with respect to time and place;

 (3) is not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood;

 (4) is reasonable from the standpoint of sound public policy; and

 (5) is supported by valuable consideration.

*Sermons v. Caine & Estes Insurance Agency, Inc.,* 275 S.C. 506, 273 S.E.2d 338 (1980); *Rental Uniform Service of Florence, Inc. v. Dudley,* 278 S.C. 674, 301 S.E.2d 142, 143 (1983).

### 1. Legitimate Interest of the Employer

South Carolina has expressly recognized that the "most important single asset of most businesses is their stock of customers. Protection of this asset against appropriation by an employee is recognized as a legitimate interest of the employer." *Standard Register Co. v. Kerrigan,* 238 S.C. 54, 119 S.E.2d 533 (1961). Plaintiffs contend that their network of dealers should be afforded the same characterization. The Court agrees that Plaintiffs will likely be able to demonstrate that the dealer-network developed by Plaintiffs is a legitimate business interest worthy of protection. Plaintiffs have already submitted some evidence of the significant time and money invested in the development of their dealer network. (Wirth Aff. at 2–4.) There is little question that such an investment would constitute a legitimate interest.

Defendants do not disagree that customers, employers, or dealers are of a legitimate interest to Plaintiffs, but contend that Plaintiffs have no legitimate interest in prohibiting the solicitation of employees, clients, and dealers of "Affiliated Companies"[1] with whom Defendants never had any personal contact and, further, that such overbreadth renders the entire covenant unenforceable.

■ As an initial matter, the Court is convinced that Plaintiffs may in fact demonstrate that the non-solicitation agreement is properly tailored and not overbroad. The agreement is expressly premised on the understanding and acknowledgment of the employee that "during his employment with the Company he shall have access to certain confidential, proprietary and trade secret information including dealer and Affiliated Company

---

1. The non-solicitation agreement prohibits the solicitation of employees, customers, and dealers of Rockford Manufacturing or any "Affiliated Company." "Affiliated Company" is defined as

 "any and all companies and/or other entities which, directly or indirectly, in whole or in part, own, manage, and/or are managed by the Company, and any and all companies and/or entities which, directly or indirectly, in whole or in part, are related to the Company as a result of common ownership, and/or common control and/or common management. Currently, the 'Affiliated Companies' include Wedg-Cor, Inc., Sunward Corporation, Rockford Manufacturing, Ltd. WedgCor Acceptance Corporation, Gold Seal Steel Buildings, Inc., Rockford Dealer Acceptance Corporation, Sunward Trucking Incorporated, Advertising Incorporated, Plus 50 Delaware Corporation and Certified Components Corporation . . . ."

(Agreement at 1.)

related information." (First. Am. Compl. Ex. A–G at 1.) There is no evidence that Defendants, through their employment with either Rockford manufacturing or Rockford acceptance, might not have, in fact, had access to information concerning the proprietary interests of Affiliated Companies for which they did not actually work. Regardless, the Court concludes that Plaintiffs have shown that they are likely to demonstrate that the covenants are ultimately divisible and capable of enforcement to the extent they do protect reasonable and legitimate interests of the Plaintiffs.

Defendants contend that South Carolina does not permit courts to "blue pencil" unreasonable provisions of an agreement and enforce reasonable ones. A survey of South Carolina law suggests otherwise.

In *Eastern Business Forms, Inc. v. Kistler,* 258 S.C. 429, 189 S.E.2d 22 (1972), the South Carolina Supreme Court considered that

> Some courts have applied the so called "blue pencil test", that is, if the excessive restraint is severable in terms, it may be disregarded and the remaining part of the contract enforced; but if the contract is not severable in terms, the entire covenant falls. We recognize that some courts apply the rule that if the restrictive covenant as to time or space is unreasonable, even though *indivisible* in terms, it is nevertheless enforceable for so much of the performance as would be a reasonable restraint. These courts hold that the legality of restraint should not turn on the mere form of the wording but upon the reasonableness of giving effect to the indivisible promise to the extent that would be lawful. We quote the following from the *Somerset* case which comes from Pollock, Contracts (11th Ed.), page 335:
>
> "A restrictive covenant which contains or may be read as containing distinct undertakings bounded by different limits of space or time, or different in subject matter, may be good as to part and bad as to part. But this does not mean that a single covenant may be artificially split up in order to pick out some part of it that it can be upheld. Severance is permissible only in the case of a covenant which is in effect a combination of several distinct covenants."

We quote from 17 C.J.S. Contracts § 289a, page 1224, the following:

> The severability of the contract must be determined from its language and subject matter; and where the severable character of the agreement is not determinable from the contract itself, the court, in order to uphold the contract, cannot create a new agreement for the parties, for example, so as to make the restraint a partial restraint within a lesser area than that specified in the covenant or for a lesser period of time.

*Eastern Business Forms, Inc. v. Kistler,* 258 S.C. 429, 189 S.E.2d 22, 23–24 (1972) (emphasis added) (citing *Somerset v. Reyner,* 233 S.C. 324, 104 S.E.2d 344 (1958)). *Eastern* and its progenitor, *Somerset,* suggest that South Carolina has not wholly rejected the "blue pencil" test. Both cases can be reasonably read to conclude that although an *indivisible* covenant may not be enforced even to a reasonable extent, a *severable* and reasonable covenant may be enforced independent of any unreasonable provisions. *See Eastern,* 189 S.E.2d at 23–24; *Somerset,* 104 S.E.2d at 347–48. Defendants contend that nowhere in the history of South Carolina jurisprudence has such an application of *Somerset* ever been made. Notwithstanding, it is clear that *Somerset* contemplates as much. Plaintiffs rightly contend that just because the particular agreements at issue in *East-*

*ern* and *Somerset* did not lend themselves to severability does not mean that there is not some covenant properly divisible such that the Court might honor the principles of *Somerset* and yet still, in effect, "blue pencil" any overbroad provisions of the covenant and enforce the narrowly tailored ones. The Court also agrees that Plaintiffs have shown a likelihood that the non-solicitation agreement in the present case is one such covenant.

■ *Eastern* and *Somerset* delineate two important principles for determining the enforceability of non-solicitation clauses. First, as stated, the contract must be severable. Second the severability must be apparent from the contract itself—in language and subject matter.

■ A covenant is severable only where it "is in effect a combination of several distinct covenants." *Somerset*, 104 S.E.2d at 348 (citing Pollock, Contracts (11th Ed.)). Unlike the covenants at issue in *Eastern* and *Somerset*, the present covenant incorporates a definition of "Affiliated Companies" which on its face may be altered without writing into the agreement something unintended by the parties. This necessarily suggests that the covenant operates more like several distinct covenants than a single indivisible one. The definition of Affiliated Company expressly lists the entire universe of companies which the Court might *potentially* conclude have a legitimate interest in enforcing the covenant against Defendants. Accordingly, the Court can logically "blue-pencil" provisions that implicate companies that have *no* legitimate interest without disrupting the integrity, continuity, or intent of the remaining provisions. *See Somerset*, 104 S.E.2d at 348.

By comparison, *Eastern* involved a covenant that delineated an unreasonable 100–mile radius. The supreme court refused to make "a partial restraint within a lesser area than that specified in the covenant"

because to do otherwise would be to "create a new agreement for the parties." *Eastern*, 189 S.E.2d at 23–24. This conclusion is necessarily predicated on the indivisible quality of the "100 mile radius" restriction. There is no smaller unit of space which the supreme court might have identified as representing an expression of the intent of the parties. The choice was either between a 100–mile radius or none at all. Likewise, in *Somerset* "[t]he covenant . . . [was] clearly indivisible. It cover[ed] the entire State of South Carolina and furnishe[d] no basis for dividing this territory. Not only d[id] the contract show that it was the intent of the parties that th[e] covenant be treated as indivisible, there [wa]s no basis for drawing a sharply defined line separating the excess territory." *Somerset*, 104 S.E.2d at 348.

Such is not the case here, First, the covenant is mechanically divisible. In the structure of the covenant itself, Plaintiffs have manifested an intention regarding each company *individually*, by choosing to list them by name. Such an expression makes it possible, logistically, to extricate those companies, *without* a legitimate interest, from the more global intent concerning all "Affiliated Companies," while leaving intact the covenant as to those companies which *do* have a legitimate interest, knowing with full confidence that the intention of the parties has been expressed and preserved in the remainder of the abridged covenant. Accordingly, the covenant is potentially severable.

Second, the parties have expressly stated their intent that the covenants be severable. Importantly, the court in *Eastern* focused on whether or not the parties *intended* that the covenant be treated as divisible. *Eastern*, 189 S.E.2d at 24. Here, the non-solicitation agreement contains a Severability Clause which states that the "invalidity or unenforceability of

any provisions of the Agreement shall not affect the other provisions hereof, and this Agreement shall be enforced and construed as if such invalid or unenforceable provision were omitted." (First Am. Compl. Ex. A–G at 3.) Thus, the covenant is not only mechanically severable, but it was the intent of the parties that it be treated as such.

Accordingly, the Court finds that Plaintiffs have demonstrated a strong probability that the Court can enforce an otherwise overly broad covenant as to only those companies which have a legitimate interest.

## 2. Reasonably Limited in Time and Place

■ The covenants at issue in this case are for a two year duration. Covenants of comparable duration have been regularly upheld as reasonable. *See, e.g., Standard Register Co. v. Kerrigan*, 238 S.C. 54, 119 S.E.2d 533 (1961) (two year covenant); *Rental Uniform Service of Florence, Inc. v. Dudley*, 278 S.C. 674, 301 S.E.2d 142, 143 (1983) (three year covenant). Defendants contend that section 5(b) of the agreement, because it does not delineate a time limitation, requires Defendants to indefinitely communicate the substance of the non-solicitation agreement to any future employers, thereby making the entire covenant unreasonable. Defendants argument is strained. While it is true that 5(b) states no time limitation, any obligation to give notice to an employer of the non-solicitation agreement obviously terminates when the agreement itself terminates. As the covenants expire after two years, Defendants could not possibly have any duty under the agreement to communicate the substance of a covenant no longer operative. The Court finds that Plaintiffs will likely demonstrate that the covenants are reasonable as to time.

■ The covenants at issue also impose client and employee based restrictions—to wit, Defendants are prohibited from soliciting Plaintiffs' employees or clients—rather than geographical restrictions. While "the general test is that contractual prohibitions must be geographically limited to what is reasonably necessary to protect the employer's business ... [p]rohibitions against contacting existing customers can be a valid substitute for a geographic limitation." *Caine & Estes Ins. Agency, Inc. v. Watts*, 278 S.C. 207, 293 S.E.2d 859 (1982); *see also Oxman v. Profitt*, 241 S.C. 28, 126 S.E.2d 852 (1962); *Wolf v. Colonial Life and Acc. Ins. Co.*, 309 S.C. 100, 420 S.E.2d 217, 222 (1992). In *Wolf v. Colonial Life and Acc. Ins. Co.*, 309 S.C. 100, 420 S.E.2d 217, 222 (S.C.App. 1992), the South Carolina Court of Appeals expressly concluded that such restrictions are reasonable and enforceable. Plaintiffs are likely to prevail in showing that the dealer and customer based restrictions are a reasonable substitute for a geographical limitation. Plaintiffs have already come forward with some evidence that the dealer and customer based restrictions will not unreasonably limit Defendants ability to do business and that they are at least as narrowly construed as a geographical limitation to effectuate Plaintiffs' legitimate interest. (See Wirth Aff. at 6–7.)

## 3. Whether the Covenant is Unduly Harsh on the Employee Defendants' Ability to Earn a Livelihood

■ Plaintiffs contend that the restrictions are narrowly drawn so as not to be unduly harsh on Defendants' ability to earn a living. The Court agrees that Plaintiffs will likely be able to demonstrate that the covenants do not prohibit employment with any of Plaintiffs' competitors and that because there is no geographical limitation, Defendants can still solicit busi-

ness anywhere. The Wirth Affidavit is evidence tending to demonstrate that Defendants continue to enjoy the ability to pursue many, steel-building-related business opportunities of their choosing. Conversely, Defendants have put forward no evidence suggesting that enforcement of the covenant would in fact be unduly harsh.

Finally, the restrictive covenants appear reasonable from the standpoint of sound public policy and are supported by consideration (in exchange for at-will employment). Defendants have not come forward with any public policy which would call the covenants into question, other than their arguments concerning the alleged overbreadth of the covenants. The covenants were concomitant to enforceable employment agreements, which the state has an interest in enforcing. There is no indication that the agreements were made under duress.

### 4. Whether the Covenant is Supported by Valid Consideration

 Defendants do challenge whether there is valuable consideration to support the non-solicitation agreement as against Defendant Bennet. The South Carolina Supreme Court has stated that "a covenant not to compete may be enforced where the consideration is based solely upon the at-will employment itself." *Riedman Corporation v. Jarosh*, 290 S.C. 252, 349 S.E.2d 404, 404 (1986.) However, "when a covenant is entered into after the inception of employment separate consideration, in addition to continued at-will employment, is necessary in order for the covenant to be enforceable." *Poole v. Incentives Unlimited, Inc.*, 345 S.C. 378, 548 S.E.2d 207, 209 (2001).

Although at the hearing Defendants argued that certain Defendants did not sign the non-solicitation agreements until a day after they started work, Defendants have only submitted an Affidavit of Defendant Herald to that end. Rather, in their memorandum in opposition, Defendants focus primarily on Plaintiffs' alleged failure to pay Defendant Bennett upon his termination and argue that such a failure renders the provisions of the non-solicitation agreement unenforceable. Defendants cite *Williams v. Riedman*, 339 S.C. 251, 529 S.E.2d 28 (S.C.App.2000) in support. The affidavit of Defendant Herald that he did not sign the agreement until his second day of work and the affidavit of Defendant Bennett that he was not properly paid wages due, while some evidence of those facts, does not, alone, convince the Court that, on whole, Plaintiffs' have not demonstrated a strong probability of success on the merits.

### CONCLUSION

It is, therefore,

**ORDERED**, for the foregoing reasons that Plaintiffs' Motion for Preliminary Injunction is GRANTED. Specifically, Defendants are **ENJOINED** from (1) using all electronic files, data, and documents taken from Plaintiffs Rockford Manufacturing, LTD, and Rockford Dealer Acceptance Corp. and destroying or altering such materials; (2) using Plaintiff Rockford Manufacturing, LTD.'s or Plaintiff Rockford Dealer Acceptance Corp's confidential information, as delineated and contemplated in the Confidentiality provision of the parties' respective Employment Agreements; (3) soliciting or accepting business from any of Plaintiff Rockford Manufacturing, LTD.'s or Plaintiff Rockford Dealer Acceptance Corp's dealers, vendors, clients, or customers whose identity was obtained through use of confidential information taken from Plaintiff Rockford Manufacturing, LTD. or Plaintiff Rockford Dealer Acceptance Corp. (any such business previously solicited shall be

specifically and fully detailed and accounted for at the hearing on the merits); and (4) otherwise refusing to honor in full the Employment Agreements entered into by Plaintiff Rockford Manufacturing, LTD. and Plaintiff Rockford Dealer Acceptance Corp. and Defendants until such time as the Court finally rules on the merits of Plaintiffs' claim. The parties shall confer and within five days submit a proposed scheduling order to the Court for expedited discovery and a date for a hearing on the merits. Finally Plaintiffs shall post a bond in the amount of $200,000 (two hundred thousand dollars) as per Federal Rule of Civil Procedure 65(c).

**AND IT IS SO ORDERED.**