786 S.E.2d 588

**PALMETTO MORTUARY TRANSPORT, INC., Respondent,**

v.

**KNIGHT SYSTEMS, INC. and Robert L. Knight, Appellants.**

**Appellate Case No. 2014–001819.**
**No. 5402.**

Court of Appeals of South Carolina.

Heard Feb. 10, 2016.
Decided May 4, 2016.
Rehearing Denied June 23, 2016.

Reginald I. Lloyd, of Lloyd Law Firm, LLC, of Camden, and Christopher Todd Hagins, of The Hagins Law Firm, LLC, of Columbia, for appellants.

John Julius Pringle, Jr. and Lyndey Ritz Zwingelberg, both of Adams and Reese LLP, of Columbia, for respondent.

WILLIAMS, J.

Knight Systems, Inc. (Knight Systems) and Robert L. "Buddy" Knight (collectively "Appellants") appeal the special referee's order ruling in favor of Palmetto Mortuary Transport, Inc. (Palmetto). Appellants argue the special referee erred in

failing to find (1) the geographic restriction in the parties' covenant not to compete (the Covenant) is unreasonable and void, (2) the Covenant's territorial restriction is unsupported by independent and valuable consideration, (3) the Covenant is void as a matter of public policy, and (4) the Covenant became void after any breach by Palmetto. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Knight Systems, owned and operated by Buddy, engaged primarily in the mortuary transport business until 2007. On January 5, 2007, Knight Systems entered into an asset purchase agreement (the Agreement) with Palmetto, a business owned by Donald and Ellen Lintal. Pursuant to the Agreement, Knight Systems sold various tangible assets, goodwill, and customer accounts—including body removal service contracts with Richland County, Lexington County, and the University of South Carolina—to Palmetto in exchange for a purchase price of $590,000. The Agreement also contained an exclusive sales provision that obligated Palmetto to purchase body bags at specified discounted prices from Knight Systems for ten years. The provision listed four types of body bags: heavy duty, lightweight, odor-proof, and water retrieval.

In addition to the Agreement, Palmetto executed the Covenant with Appellants. In consideration of $1,000, Appellants agreed not to provide mortuary transport services within 150 miles of their business—located in Lexington County—for ten years following the closing date of the sale.

The subject of dispute in the instant ligation began in June 2011, when Richland County issued a request for proposal (RFP) seeking mortuary transport services from a provider for a period of five years. At that time, Palmetto still held the services contract with Richland County as a result of the Agreement. Palmetto timely submitted a response to the RFP.

On June 16, 2011, one day before responses to the RFP were due, Buddy recorded a telephone conversation he had with Donald Lintal. In that conversation, Buddy accused Palmetto of breaching the Agreement by buying infant body bags from other manufacturers in 2008. Donald relayed that he did not believe these purchases were significant and he was "not trying to get around" the Agreement. Donald claimed

the amount of bags Palmetto purchased from sources other than Knight Systems only totaled $884.97. This amount included thirty-one infant body bags at $192.75, four extra-large body bags at $213.72, six heavy duty body bags at $208.50, and six water retrieval body bags at $270.

Donald, however, asserted that because infant and extra-large body bags were not the type of bags Palmetto was required to purchase from Knight Systems pursuant to the Agreement, the total amount Palmetto paid for body bags falling within the exclusive sales provision was $478.50. In comparison, from January 2007 to June 2011, Palmetto purchased more than $45,000 worth of body bags from Knight Systems under the Agreement. Therefore, Donald contended the sales that allegedly violated the Agreement constituted less than 1% of Palmetto's overall purchases from Knight Systems.

After this telephone conversation, Buddy consulted with his attorney and submitted a response to the RFP on June 17, 2011. Buddy stated he felt Knight Systems would be "left out in the cold" by Palmetto's alleged breach of contract. After the RFP deadline passed, Buddy contacted an official at the Richland County Procurement Office, seeking a determination that Knight Systems be awarded the mortuary transport services contract because it was the only provider of odor-proof body bags required by the RFP. Buddy also informed the official that Knight Systems would be taking all of its odor-proof body bags off the market. Although Palmetto asserted its response to the RFP contained the lowest price for services and had the highest total of points from the Richland County Procurement Office, Richland County awarded Knight Systems the mortuary transport services contract for a five-year term.

On October 26, 2011, Palmetto filed a complaint against Appellants. On June 6, 2013, Palmetto amended its complaint and included causes of action for breach of contract, breach of contract accompanied by a fraudulent act, and intentional interference with prospective contractual relations. Palmetto alleged Appellants breached the Covenant by providing mortuary transport services within the restricted 150–mile radius of Lexington County. Palmetto also claimed Buddy intention-

ally made false representations to Richland County that Knight Systems had the exclusive ability to supply odor-proof body bags—as required by the RFP—because Knight Systems was obligated under the Agreement to sell the odor-proof bags to Palmetto.

Appellants answered and counterclaimed for breach of contract on July 2, 2013. According to Appellants, Palmetto first breached the Agreement by purchasing body bags from another source in violation of the exclusive sales provision. Appellants also contended the Covenant was unenforceable because it was not supported by adequate consideration and contained unreasonable restrictions in duration and geographic scope.

By consent order, the case was referred to a court-appointed special referee and tried on December 18, 2013. In an order issued on July 22, 2014, the special referee ruled in favor of Palmetto. The special referee found the Covenant was supported by valuable consideration and reasonably limited in time and geographic scope. Further, the special referee held Appellants breached the Agreement by refusing to make the odor-proof bags available for purchase and violated the Covenant by submitting a response to the Richland County RFP. Lastly, the special referee found Palmetto's purchase of body bags from other manufacturers did not constitute a material breach of the Agreement that excused Appellants' performance of their contractual duties.

In light of his rulings, the special referee ordered Appellants to pay attorney's fees and damages of $373,264.54 in lost profits resulting from their wrongful competition with Palmetto. The special referee also ordered Palmetto to pay damages of $478.50 to Appellants for purchasing body bags in violation of the exclusive sales provision. Finally, the special referee issued a permanent injunction against Appellants, requiring them to comply with the terms of the Covenant for a term of five years and seven months following the date of his order, with the exception of their performance of the services contract with Richland County. This appeal followed.

## STANDARD OF REVIEW

"When legal and equitable actions are maintained in one suit, this court is presented with a divided scope of review, and each action retains its own identity as legal or equitable

for purposes of review on appeal." *Wright v. Craft,* 372 S.C. 1, 17, 640 S.E.2d 486, 495 (Ct.App.2006).

"A breach of contract action is an action at law." *Madden v. Bent Palm Invs., LLC,* 386 S.C. 459, 464, 688 S.E.2d 597, 599 (Ct.App.2010). "[W]hen reviewing an action at law, on appeal of a case tried without a jury, the appellate court's jurisdiction is limited to correction of errors at law, and the appellate court will not disturb the [special referee]'s findings of fact as long as they are reasonably supported by the evidence." *Ritter & Assocs., Inc. v. Buchanan Volkswagen, Inc.,* 405 S.C. 643, 649, 748 S.E.2d 801, 804 (Ct.App. 2013) (alterations in original) (quoting *Mazloom v. Mazloom,* 382 S.C. 307, 316, 675 S.E.2d 746, 751 (Ct.App.2009)). "[T]he interpretation of an unambiguous contract is a question of law, as is the question of whether a non-competition clause is reasonable." *Baugh v. Columbia Heart Clinic, P.A.,* 402 S.C. 1, 12, 738 S.E.2d 480, 486 (Ct.App.2013).

Actions for injunctive relief sound in equity. *Denman v. City of Columbia,* 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010). "In equitable actions, an appellate court may review the record and make findings of fact in accordance with its own view of the preponderance of the evidence." *Id.*

## LAW/ANALYSIS

### I. Geographic Scope

Appellants contend the special referee erred in finding the Covenant's territorial restriction of a 150–mile radius was reasonable and enforceable. We agree.

In South Carolina, our courts will generally uphold and enforce a covenant not to compete arising out of the sale of a business if it is (1) reasonably limited as to time and territory, (2) supported by valuable consideration, and (3) not detrimental to the public interest. *S.C. Fin. Corp. of Anderson v. West Side Fin. Co.,* 236 S.C. 109, 119, 113 S.E.2d 329, 334 (1960).

This court will uphold a geographic restriction in a covenant not to compete ancillary to the sale of a business if it is "reasonably restricted as to the place of territory" and is no "more enlarged than essential for a reasonable protection of the rights of the purchasing party." *Metts v. Wenberg,* 158 S.C. 411, 415, 155 S.E. 734, 735 (1930). To determine whether

a territorial restriction in a covenant not to compete is reasonable, the court must examine (1) the whole subject matter of the contract, (2) the kind and character of the business, (3) its location, (4) the purpose to be accomplished by the restriction, and (5) all circumstances showing the intentions of the parties in making the contract. *Reeves v. Sargeant,* 200 S.C. 494, 501, 21 S.E.2d 184, 188 (1942). Therefore, we must naturally decide each case on its own facts. *Id.* at 502, 21 S.E.2d at 188. South Carolina does not follow the "blue pencil" rule and, thus, "restrictions in a non-compete clause cannot be rewritten by a court or limited by the parties' agreement, but must stand or fall on their own terms." *Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.,* 387 S.C. 583, 588, 694 S.E.2d 15, 18 (2010).

Our supreme court previously addressed the validity of a similar territorial restriction in *Somerset v. Reyner,* 233 S.C. 324, 104 S.E.2d 344 (1958). In *Somerset,* a silversmith in the retail business of selling silver, china, crystal, and jewelry sold his shop located in the Five Points area of Columbia, South Carolina, to a local competitor. 233 S.C. at 327–28, 104 S.E.2d at 345–46. As part of the sale, the seller covenanted not to engage in the business of selling silverware or jewelry in South Carolina for twenty years. *Id.* at 328, 104 S.E.2d at 346. Following the sale, the purchaser briefly employed the seller as manager of the shop but soon terminated his employment after about three months. *Id.* at 329, 104 S.E.2d at 346. The seller subsequently brought a declaratory judgment action, seeking a determination that, among other things, the geographic restriction was unreasonable and the covenant was void. *Id.* at 326, 104 S.E.2d at 345. The circuit court granted declaratory judgment, concluding the restriction was unreasonable and, thus, the covenant was void as against public policy. *Id.*

On appeal, our supreme court affirmed, finding no rational basis for the extent of the statewide restriction. *Id.* at 330, 104 S.E.2d at 347. The court noted the shop was a relatively small retail store, with its sales coming almost entirely from the greater Columbia area. *Id.* at 330, 104 S.E.2d at 346. Indeed, Columbia sales accounted for 95% of its revenue prior to the sale. *Id.* at 328, 104 S.E.2d at 345. Therefore, the court found that, to protect the purchaser's interest in the

shop, it was not necessary to prohibit the seller from engaging in similar business in "Charleston, Spartanburg, Greenville[,] or numerous other cities in South Carolina." *Id.* at 330, 104 S.E.2d at 346. The court also rejected the purchaser's argument that the seller was estopped from attacking the validity of the covenant because the seller, who indicated he had no intention of going back into the business, told the purchaser during negotiations that he could make the restriction for the entire state. *Id.* at 330–31, 104 S.E.2d at 347. Likewise, the court declined to apply the "blue pencil" doctrine to redraw the scope of the restriction to make it reasonable because the covenant was "clearly indivisible" and "furnishe[d] no basis for dividing this territory." *Id.* at 332, 104 S.E.2d at 348.

Turning to the instant case, the special referee found the 150–mile restriction was reasonable based upon two pieces of testimony. First, the special referee noted Donald testified he wished to keep open the option of expanding Palmetto's business throughout other counties in South Carolina. The record, however, indicated Knight Systems—a small business located in Lexington County at the time of the sale—only engaged in the mortuary transport business in Richland and Lexington counties prior to the sale to Palmetto. In fact, at the time of Palmetto's purchase, Knight Systems only had services contracts with Richland County, Lexington County, and the University of South Carolina in Columbia. We do not believe Palmetto's tentative desire to expand its business throughout the state—without more evidence of definitive planning, acquisitions, or other overt acts—supports a finding that the restriction is reasonable.

Second, the special referee relied upon Buddy's testimony that he did not intend to get back into the mortuary transport business after the sale to Palmetto. As suggested in *Somerset,* we do not believe Appellants' intention of not returning to the mortuary transport business is a relevant factor for analyzing whether a territorial restriction is reasonable. We also note Donald testified that Palmetto included the 150–mile restriction in the Covenant. Although Knight Systems, with the assistance of counsel, agreed to the territorial restriction in the Covenant, we believe no rational basis exists for enforcing a territorial restriction covering the entire state and parts of neighboring states that prohibits Appellants from engaging

in the mortuary transport business. In our view, the 150–mile restriction was overly broad and did not protect the rights and interests of Palmetto in a reasonable manner. *See Metts,* 158 S.C. at 415, 155 S.E. at 735 (holding a territorial restriction must not be "more enlarged than essential for a reasonable protection of the rights of the purchasing party"). Accordingly, contrary to the special referee, we find the geographic restriction in the covenant is unreasonable and, therefore, is unenforceable.

■ Further, although the Covenant's enforceability clause invites us to "blue pencil" the territorial restriction to one we find reasonable if the 150–mile restriction is deemed unenforceable, our longstanding precedent provides this court cannot modify the restriction. *See, e.g., Poynter Invs.,* 387 S.C. at 588, 694 S.E.2d at 18 (holding that "restrictions in a non-compete clause cannot be rewritten by a court or limited by the parties' agreement, but must stand or fall on their own terms"). In *Team IA, Inc. v. Lucas,* this court held that, while a nationwide territorial restriction in an employment non-compete agreement was overly broad and unreasonable, a smaller alternative restriction—or "step-down provision"—agreed to by the parties and contained in the contract could be valid and enforced by a court. 395 S.C. 237, 246, 717 S.E.2d 103, 107 (Ct.App.2011). In the instant case, however, the Covenant contains no step-down provision. Thus, we find it would be impermissible for this court to redraw a smaller territorial restriction because doing so would amount to rewriting the Covenant to add an arbitrary term upon which the parties did not negotiate or agree. *See Lowcountry Open Land Tr. v. Charleston S. Univ.,* 376 S.C. 399, 410, 656 S.E.2d 775, 781 (Ct.App.2008) ("Courts only have the authority to specifically enforce contracts that the parties themselves have made; they do not have the authority to alter contracts or make new contracts for the parties.").

## II. Remaining Issues

In light of our finding that the Covenant's territorial restriction is unreasonable and void, we decline to address the remaining issues on appeal. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598

(1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

## CONCLUSION

Based on the foregoing, we hold the Covenant's 150–mile territorial restriction is unreasonable and unenforceable. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

LOCKEMY and McDONALD, JJ., concur.